IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAW OFFICES OF RICHARD E. WILSON, LLC,<br><br>       Plaintiff,<br><br>  vs.<br><br>LAURENCE H. SMITH; MITCHELL T. HELLER; MAKAIWA RESORT COMPANY LLC, ET AL.,<br><br>       Defendants. | CIV. NO. 21-00184 JMS-KJM<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION, ECF NO. 13 |

## ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION, ECF NO. 13

## I. INTRODUCTION

Plaintiff Law Offices of Richard E. Wilson, LLC ("Plaintiff" or "Wilson") moves to compel[1] Defendants Laurence H. Smith ("Smith") and Mitchell T. Heller ("Heller") (collectively, "Defendants") to arbitrate this dispute regarding Defendants' alleged non-payment of legal fees and of a loan.[2]  ECF No.

---

[1] Plaintiff also moved to remand this action to the First Circuit Court of the State of Hawaii, from which it was removed.  ECF No. 13 at PageID ## 80-82.  Plaintiff, however, withdrew that aspect of the motion at a September 13, 2021 hearing.  *See* ECF No. 24.

[2] Plaintiff also named Makaiwa Resort Company, LLC ("Makaiwa") as a Defendant. The Complaint references Makaiwa as a client in an April 2019 lawsuit, ECF No. 1-2 at PageID ## 12-14, and alleges that "Smith and Heller were the alter-egos of Makaiwa," *id.* at PageID # 14.  But because Makaiwa has no apparent role in the retainer agreement, the court focuses on Smith and Heller as the relevant Defendants for purposes of this Motion to Compel.

13.  Plaintiff seeks to compel arbitration for two independent reasons: (1) a March 13, 2009 written retainer agreement between the parties includes a binding arbitration clause; or (2) Defendants waived their right to object to arbitration (or are estopped from objecting) by initially participating in an arbitration with Dispute Prevention and Resolution, Inc. ("DPR") and then later objecting to arbitration after an unfavorable ruling.

Based on the following, the Motion to Compel Arbitration is GRANTED.  Defendants waived their right to object to arbitration or are estopped from denying that the dispute must be arbitrated.

## II.  <u>BACKGROUND</u>

The underlying dispute in this action concerns Defendants' alleged non-payment of fees for Plaintiff's legal services performed for Defendants on "several matters" from 2009 until 2019, and Defendants' alleged failure to make certain loan payments to Plaintiff.  *See* ECF No. 1-2 at PageID ## 11-12.  The merits of the underlying dispute, however, are not at issue here.  Rather, the only question now before the court is whether the dispute must be arbitrated.  The court thus focuses on the circumstances relevant to that procedural question, as set forth in a timeline fashion as follows:

| Date | Event |
|------|-------|

"Early 2009"    Plaintiff attests that he was retained by Defendants for legal services.  ECF No. 13-2 at PageID # 91.  *See also* ECF No. 1-2 at PageID # 10.  Smith is apparently a practicing attorney and business partner of Heller.  ECF No. 1-2 at PageID # 9.

May 13, 2009    Plaintiff emails to Defendants an "engagement agreement" dated March 13, 2009 (the "2009 engagement agreement") that states:

> "This letter of engagement pertains to my representation of you, KKO Development, LLC and KKO Oasis, LLC in Civil No. 08-1-0745-04 (GJK), and you and TBK Terraces, LLC in 08-1-2445-11(KKS).  Both lawsuits have been filed and are presently pending in the Court of the First Circuit, State of Hawaii."

ECF No. 13-3 at PageID # 101; *see also* ECF No. 13-4 at PageID # 106.  The agreement also contains an arbitration clause providing:

> "We all agree to submit all disputes hereunder (including but not limited to the amount of fees and costs incurred) exclusively to [DPR] for binding arbitration.  We both agree to split the costs of arbitration and agree to bear our own attorney's fee associated therewith."

ECF No. 13-3 at PageID # 103.

May 31, 2009    Plaintiff emails Defendants, apparently regarding the state court litigation.  He tells Defendants: "We have been served with a substantial amount of discovery. . . . I still do not have any documents, excluding the initial emails, from you. . . .  I also have not received the executed engagement

3

letter or fees." ECF No. 13-6 at PageID # 111. Plaintiff nevertheless proceeds with representing Defendants for the matters referenced in the 2009 engagement agreement.

June 12, 2009     Plaintiff emails Defendants about discovery matters. ECF No. 13-7 at PageID # 113. Again, Plaintiff mentions his fees and the engagement agreement: "Also engagement letter and invoice—any chance I can get an executed copy and paid?" *Id.*

June 30, 2009     Plaintiff emails Smith asking, "Did your secretary actually send the engagement letters and payment like she said two weeks ago? Still nothing in the mail and I worry about USPS black holes. . . . PDF me the engagement letter[.]" ECF No. 13-8 at PageID # 115.

The record is silent as to the status of the 2009 engagement agreement for the next five years. For his part, Plaintiff attests:

> "I have a general recollection of receiving the executed copy shortly thereafter [June 2009]. My recollection is supported in part because I made no further requests to [Defendants] for the engagement agreement. If I had not received it, I would have continued to inquire. Moreover, since Smith is a licensed attorney, I doubt that he would have agreed to retain new, and at the time, unknown counsel without a signed engagement agreement."

ECF No. 13-2 at PageID # 92. Defendants, however, attest that they "have no recollection of ever signing the agreement or indicating assent to all or any of the terms in the proposed Engagement Agreement." ECF No. 15-1 at PageID # 208; ECF No. 15-2 at PageID # 212.

May 4, 2014          Plaintiff emails Smith regarding non-payment for various
                     matters.  ECF No. 13-9 at PageID # 117.  He tells Smith,
                     among other things:

> "Five years of representation, four lawsuits later,
> and even taking into account the fees which I have
> been paid, you're ahead by $5k. . . .  I'm going to
> withdraw from all matters. . . .  With respect to the
> $39,500 in loans, let me know how you intend to
> proceed.  As for the fees, I will send you a final
> invoice and once I have withdrawn, will initiate
> binding arbitration per the engagement
> agreement."

> *Id.*  Smith did not deny the existence of the 2009
> engagement agreement, and responded, "Mi will send the
> check please give me the address sorry."  *Id.*

Apr. 16, 2015        Plaintiff emails Defendants, stating that he is withdrawing
                     from representation in a state court lawsuit.  He tells them:

> "Per our original 2009 engagement agreement:  We
> all agree to submit all disputes . . . exclusively to
> [DPR] for binding arbitration. We both agree . . . to
> bear our own attorney's fees associated therewith."

> ECF No. 13-10 at PageID # 119.  Plaintiff then states:

> "While there should be no dispute concerning the
> necessity and reasonableness of the fees charged, I am
> submitting a demand for arbitration with DPR per our
> agreement.  As for non-payment of the personal loans,
> I will be proceeding accordingly."

> *Id.*  There is no indication that, in response to Plaintiff's
> threatened arbitration, Defendants denied the existence of
> the 2009 engagement agreement's arbitration clause.  But

there is also no indication in the record regarding any arbitration being initiated in 2015.

| | |
|---|---|
| Oct. 9, 2020 | Plaintiff institutes an arbitration proceeding against Defendants with DPR.  *See* ECF No. 13-11 at PageID # 121-22.  He bases the arbitrability on the 2009 engagement agreement.  *See id*. at PageID ## 124-26. |
| Oct. 13, 2020 | Smith emails DPR regarding Plaintiff's arbitration demand, stating that "we are hiring counsel and will reply through them shortly."  ECF No. 13-12 at PageID # 129. |
| Nov. 3, 2020 | Smith emails DPR, stating in part that "we are not in agreement that we have consented to the jurisdiction of the ADR.  However, we are leaning in that direction after speaking with counsel whom we expect to retain this week."  ECF No. 13-13 at PageID # 131. |
| Nov. 9, 2020 | DPR emails Defendants regarding a pre-arbitration conference scheduled for November 10, 2020.  ECF No. 13-14 at PageID # 133.  Heller responds by asking that the conference be rescheduled to when he and Smith are available.  *Id.*  He does not object to jurisdiction of the arbitrator. |
| Nov. 17, 2020 | Arbitrator (former State Court Judge) Patrick Yim holds a scheduling conference with both parties, and Yim sets an arbitration hearing for February 11-12, 2021, with a discovery cut-off date of January 25, 2021 and pre-arbitration briefing and exhibits due on February 4, 2021.  *See* ECF No. 15-8 at PageID ## 240-42.  In a later ruling, Yim describes the conference as having been set "by agreement of the parties."  ECF No. 13-27 at PageID # 168; ECF No. 15-10 at PageID # 245. |
| Nov. 17, 2020 | DPR asks the parties to both sign its arbitration agreement and deposit $6,300 for arbitration fees, by December 11, 2020.  ECF No. 15-7 at PageID ## 234-35.  DPR notes that |

fees are to be shared 50/50 between Plaintiff and Defendants. *Id.* at PageID # 234.

Nov. 21, 2020    Plaintiff requests production of documents from Defendants. ECF No. 13-16 at PageID # 138. The request seeks, among other items, (1) all emails "which refer, relate, or concern Wilson and/or payments to Wilson," (2) "[e]mails and/or other written communications between Smith and his brother . . . which refer, relate, or concern a loan for purposes of paying Wilson," (3) "[a]ll correspondence with third parties which refer, relate, or concern Wilson and/or payments to Wilson," and (4) "[a]ll cancelled checks and/or wires memorializing any payments made to Wilson from 2011 to present." ECF No. 13-15 at PageID ## 135-36.

Dec. 21, 2020    Plaintiff emails Defendants regarding his outstanding request for production of documents. He writes: "When shall I expect the response and documents? If there is a problem, we can schedule a status with Judge Yim." ECF No. 13-16 at PageID # 138.

Dec. 21, 2020    Heller responds to Plaintiff's December 21, 2020 email by producing "a folder with copies of checks and wires pursuant to your request . . . . More material will be forwarded shortly." *Id.*

Dec. 27, 2020    Plaintiff emails Defendants regarding his request for documents:

> "Am still awaiting production of the other requested documents. . . . If there is a problem, we should address this with Judge Yim. If I do not hear from you by tomorrow afternoon, I'll request a status with Judge Yim."

ECF No. 13-17 at PageID # 140.

| | |
|---|---|
| Dec. 27, 2020 | Smith responds to Plaintiff's December 27, 2020 email, stating: "[W]e will respond to the balance of your request this coming week as well as providing our own request for documents." *Id.* |
| Dec. 31, 2020 | Smith formally responds with some written objections to Plaintiff's November 21, 2020 request for production of documents. ECF No. 13-15 at PageID # 135. |
| Dec. 31, 2020 | Plaintiff requests a discovery conference with Yim due to Smith's objections. *See* ECF No. 13-20 at PageID # 150. |
| Jan. 4, 2021 | The parties submit a joint letter to Yim, notifying him that "[a] discovery dispute has arisen between the parties," and seeking a status conference. ECF No. 13-19 at PageID # 145. The four-page letter outlines Defendants' document requests and Smith's objections. It is signed by Plaintiff and Smith. *Id.* at PageID # 148. |
| Jan. 5, 2021 | Smith asks Yim for permission to submit a response to the January 4, 2021 letter by January 12, 2021. *See* ECF No. 13-20 at PageID # 150. |
| Jan. 12, 2021 | Smith provides Yim a response to the January 4, 2021 letter. *See id.* |
| Jan. 15, 2021 | Yim issues an order that rules on the discovery dispute, overruling Smith's objections to Plaintiff's request for production of documents. *Id.* at PageID # 151. Yim orders that "[Defendants] Smith and Heller shall produce the documents as requested by [Plaintiff] by January 20, 2021." *Id.* |
| Jan. 19, 2021 | Heller writes a letter to Plaintiff seeking to settle "any and all of your claims against Laurence Smith, Mitchell Heller[,] TKO Development, LLC, TKB Development, LLC, Interisland Resorts, LLC and Makaiwa Resort Development, LLC." ECF No. 13-24 at PageID # 162. |

After discussing a source of funds, Heller writes "[i]n the interim we would like to suspend the current arbitration while we attempt to work something out that is satisfactory to all involved and documented." *Id.*

Jan. 20, 2021    Smith writes to Yim, responding to Yim's discovery order, stating that certain documents "either do not exist or cannot be located," and that "[t]here were no emails regarding the matter with my brother." ECF No. 13-21 at PageID # 154. Other bank records, Smith explains "will take some time." *Id.* He also states "[w]e agree to produce the records upon receipt." *Id.*; *see also* ECF No. 13-21 at PageID # 153 (January 21, 2021 cover email to DPR from Smith stating that "[t]here was not enough time to order and receive the bank records due to the age of the records and the bank holiday on Monday as well as recovering the request late on my Friday evening").

Jan. 21, 2021    Plaintiff writes a letter to Yim, responding to Smith's January 20, 2021 communication and disputing many of Smith's arguments. ECF No. 13-22 at PageID ## 157-58.

Jan. 23, 2021    Plaintiff responds to a request for production of documents from Defendants for "[c]opies of all signed agreements or contracts to provide legal services to [Defendants]":

>"There was a sole executed engagement agreement dated March 13, 2009, when [Plaintiff] was initially retained by [Defendants]. Due to the passage of time and despite [Plaintiff's] good faith efforts to locate it, [Plaintiff] was unable to obtain it."

ECF No. 15-11 at PageID # 247.

Jan. 27, 2021    Yim responds to the parties' letters of January 20 and 21, 2021 by acknowledging receipt but "declin[ing] to respond further." ECF No. 13-23 at PageID # 160. He

states "[i]f there are consequences to ensue from any alleged non-compliance with the [January 15, 2021] Ruling and Order, such will be determined within the [upcoming] arbitration hearing[.]"  *Id.*

Jan. 27, 2021     DPR emails the parties about the status of DPR's arbitration agreement, indicating that the arbitration will be postponed unless the signed agreements and deposits are not provided by February 1, 2021.  ECF No. 15-8 at PageID # 239.

Feb. 2, 2021      DPR again emails the parties, stating that it has not received the signed arbitration agreements or deposits. ECF No. 15-8 at PageID # 238.  DPR also states that the arbitration can proceed if Plaintiff pays all fees.  *Id.* Plaintiff confirms that he will pay all fees, and DPR states that therefore "the arbitration will proceed as scheduled." *Id.* at PageID # 237.

Feb. 2, 2021      Defendants write a letter to DPR, stating that "[w]e are unwilling to participate in the arbitration at this time unless and until we have a clear understanding that the named individuals are not a party to the arbitration as they have not contracted for the legal services which the [Plaintiff] claims are due and owing to it."  ECF No. 13-25 at PageID # 164.  The letter is signed by Defendants "in our capacity of Managers of TKB Development, LLC and KKO Development, LLC."  *Id.*  The letter states:

> "We've been unable to find an executed copy of [Plaintiff's] March 13, 2009 engagement agreement. And, as it turns out [Plaintiff] is also unable to produce such a signed document or engagement agreement as noted by [Plaintiff] in response to [Defendants'] first document discovery request."

> *Id.* Defendants declare that "if we decide to participate in the arbitration[,] we would need a delay to prepare for the arbitration." *Id.*

Feb. 3, 2021    Defendants write another letter to DPR, stating that "we see no evidence from [Plaintiff] that we are subject to DPR jurisdiction. Nor have we been able to locate an executed hard or electronic copy of the alleged March 2009 representation agreement." ECF No. 13-26 at PageID # 166. They request a status conference with Yim. *Id.*

Feb. 4, 2021    Yim issues a "Ruling and Order re:  Objection to Jurisdiction." ECF No. 13-27 at PageID # 168. He deems Defendants' February 2, 2021 letter to be an objection to jurisdiction and "temporarily suspend[s]" the arbitration, reasoning in part as follows:

> "It is noted that there was scheduling conference conducted by the arbitrator on November 17, 2020 with the [Plaintiff] and both [Defendants] in attendance.  By agreement of the parties, a scheduling Order dated November 17, 2020 was issued.  Said Order, by agreement of the parties, scheduled the arbitration hearing for February 11 and 12, 2021."

> "Before the February 2, 2021 letter from the [Defendants], they neither voiced, nor raised to the tribunal, any challenge that the controversy was not properly subject to arbitration.  Instead, the [Defendants] continued to communicate with the tribunal and, further, on January 2021, submitted to the arbitration tribunal a discovery dispute that had arisen between the parties.  As a result thereof, the Arbitrator, after the issue was joined and both parties submitted their respective arguments, issued his January 15, 2021 Ruling and Order overruling

11

the [Defendants'] objections to the [Plaintiff's] production requests and ordering the production of documents requested."

"Though under other circumstances, it may be concluded that the Respondents voluntarily submitted this controversy to the jurisdiction of this tribunal, the DPR Rules are silent and provide no guidance as to how the present objection of the Respondents to arbitrate should be determined."

*Id.* at 168-69. After suspending the arbitration, Yim orders that "[Plaintiff] shall seek a ruling from a Court of competent jurisdiction in the State of Hawaii, compelling [Defendants] to submit to the arbitration of this controversy." *Id.* at PageID # 169.

| | |
|---|---|
| Mar. 16, 2021 | Plaintiff files suit against Defendants for breach of contract and related causes of action in the Circuit Court of the First Circuit, State of Hawaii. ECF No. 1-2. |
| Apr. 15, 2021 | Defendants remove the action to federal court based upon diversity of citizenship. ECF No. 1. |
| May 28, 2021 | Plaintiff moves to remand the action to state court, or in the alternative, to compel arbitration ("Motion to Compel Arbitration"). ECF No. 13. |
| July 26, 2021 | At a hearing on the Motion to Compel Arbitration, the parties agree to attempt mediation with the assigned Magistrate Judge. *See* ECF No. 18. The mediation is unsuccessful. |
| Sept. 18, 2021 | The court holds a further hearing on the Motion to Compel Arbitration. ECF No. 24. At the hearing, Plaintiff withdraws his request to remand the action. *Id.* |

12

Oct. 28, 2021          Defendants submit a supplemental authority (caselaw decided after the hearing) to the court.  ECF No. 25.

## III.  <u>DISCUSSION</u>

Plaintiff argues that Defendants are required to arbitrate this dispute because the March 13, 2009 engagement agreement includes a binding arbitration clause.  Alternatively, he argues that Defendants are bound to arbitrate based on equitable principles of estoppel or waiver.  The current record is insufficient for the court to compel arbitration on the first ground (a binding arbitration clause), but clearly establishes compelling arbitration on the second (estoppel/waiver).

**A.      Further Factual Proceedings Are Necessary to Determine Whether the Parties Signed the 2009 Engagement Agreement and Whether It Fully Encompasses the Underlying Dispute**

In deciding whether to compel arbitration, the Federal Arbitration Act ("FAA") provides in part that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4. The FAA "limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

13

encompasses the dispute at issue.'"  *Cox v. Ocean View Hotel Corp.*, 533 F.3d

1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

207 F.3d 1126, 1130 (9th Cir. 2000)).

> Likewise, Hawaii Revised Statutes ("HRS") § 658A-7(a) provides:
>
> On motion of a person showing an agreement to arbitrate
> and alleging another person's refusal to arbitrate pursuant
> to the agreement:
> . . .
> (2) If the refusing party opposes the motion, the court
> shall proceed summarily to decide the issue and order the
> parties to arbitrate unless it finds that there is no
> enforceable agreement to arbitrate.

In this regard, HRS § 658A-6(b) provides that "[t]he court shall decide whether

an agreement to arbitrate exists or a controversy is subject to an agreement to

arbitrate."

In seeking to compel arbitration, Plaintiff contends that the arbitration

clause in the 2009 engagement agreement "was executed by both Smith and Heller

individually."  ECF No. 13-1 at PageID # 85.  But the parties agree that an

executed copy of the agreement has not been produced by either side.  Plaintiff

admits that "the TKB/KKO files" (presumably referring to the 2009 state court

litigation where Plaintiff represented Defendants or their corporate entities) "were

shredded in 2019," and that Plaintiff "did not retain the original or make a copy of

the executed engagement agreement."  *Id.*  The parties proffer dueling declarations

14

about whether the 2009 engagement agreement was signed.  *Compare* ECF No. 13-2 at PageID # 92 (Plaintiff's recollection of receiving the executed copy in 2009) *with* ECF No. 15-1 at PageID # 208 (Smith's having no recollection of ever signing the 2009 engagement agreement) *and* ECF No. 15-2 at PageID # 212 (Heller's identical lack of recollection of signing the 2009 engagement agreement).

There is thus a classic dispute of fact.  Although a factfinder might be able to infer from the circumstances—given Plaintiff's subsequent representation of Defendants in several matters—that Defendants did in fact execute the 2009 engagement agreement, the court cannot so conclude based on the current disputed record.  Evidentiary proceedings are required to determine whether the parties are bound to arbitrate based on the clause in the 2009 engagement agreement.

In this regard, a question arises as to whether federal law under 9 U.S.C. § 4 of the FAA, or state law under HRS § 658A-7, would control those evidentiary proceedings.  Here, Plaintiff originally filed the Complaint in state court, alleging only state law causes of action (but did not include a cause of action to compel arbitration).  Only after Defendants removed the action to federal court based on diversity of citizenship did Plaintiff file his motion seeking to compel arbitration.  But "[t]he FAA allows a party aggrieved by another party's failure to arbitrate to bring either an original petition to arbitrate, *or where an action has*

*already been filed, a motion to compel arbitration* 'in any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter arising out of the controversy between the parties.'"  *S.S. ex rel. Stern v. Peloton Interactive, Inc.*, 2021 WL 4711675, at *6 (S.D. Cal. Oct. 7, 2021) (citing 9 U.S.C. § 4) (emphasis added).

At first glance, the FAA's procedures seem to apply (even in state court).  *See, e.g.*, *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) ("The 'body of federal substantive law' generated by [the FAA] is equally binding on state and federal courts."  (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984))). "Given the substantive supremacy of the FAA, but the Act's nonjurisdictional cast,[3] state courts have a prominent role to play as enforcers of agreements to arbitrate."  *Id.*

But when a party seeks to compel arbitration, 9 U.S.C. § 4 allows "the party alleged to be in default" of the arbitration agreement to "demand a jury trial" on the issue in certain circumstances.  In contrast, HRS § 658A-7(a)(2) mandates that "*the court* shall proceed summarily to decide [arbitrability] and order the parties to arbitrate unless it finds that there is no enforceable agreement to

---

[3] The FAA "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis."  *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)).

arbitrate." (emphasis added).[4]  Given this difference, determining whether to apply state or federal law might require an analysis under *Erie RR. Co. v. Thompkins*, 304 U.S. 64 (1938).

The court, however, need not resolve whether Defendants signed and are bound by the 2009 engagement agreement, nor whether state or federal law governs that question, because—as analyzed to follow—the court concludes that Defendants must arbitrate the underlying dispute based on equitable principles.[5] That is, regardless of whether the parties executed the 2009 engagement agreement, the court agrees with Plaintiff's second ground for compelling arbitration:  Defendants waived a right to object to arbitration, or are estopped from objecting, based on their conduct in the now-stayed DPR proceeding before arbitrator Yim.

---

[4] *See Safeway, Inc. v. Nordic PCL Constr., Inc.*, 130 Haw. 517, 532, 312 P.3d 1224, 1239 (Haw. Ct. App. 2013) (holding that "upon a disputed motion to compel arbitration, where there are genuine issues of material fact as to the existence of an arbitration agreement, a trial court must resolve those issues through an evidentiary hearing"); *id.* at 531, 312 P.3d at 1238 (reasoning that "the judge conducts an expedited evidentiary hearing on the matter and then decides the issue" (quoting *St. Fleur v. WPT Cable Systems/Mutron*, 879 N.E.2d 27, 33 (Mass. 2008))).

[5] The court also need not decide whether the 2009 engagement agreement is broad enough to cover all of the allegations in the underlying dispute, which include unpaid attorney's fees for several different matters, as well as unpaid loan obligations.

**B.      Defendants Waived the Right to Object to Arbitrability (Or Are Estopped from Challenging Arbitrability)**

Courts "have long recognized a rule that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) (citing *Ficek v. S. Pac. Co.*, 338 F.2d 655, 657 (9th Cir. 1964)).  "The rule is sometimes stated in terms of waiver:  A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act." *Ficek*, 338 F.2d at 657 (citations omitted).  The rule is not limited to situations where an arbitrator renders a full decision on the merits.  *See Daniel*, 724 F.2d at 1357 ("Although Daniel attempted to deny the authority of the arbitrator prior to the arbitrator's final decision, we find the principles announced in *Ficek* equally applicable . . . [where] he had voluntarily participated over a period of several months," and challenged the legitimacy of the arbitration process "shortly before the arbitrator announced her decision").

This deep-rooted rule is consistent with principles whereby "an agreement [to arbitrate] may be implied from the party's conduct." *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) (citations omitted). Even if an arbitration encompasses issues outside a written arbitration agreement,

"[i]t is hornbook law that parties by their conduct may agree to send issues outside an arbitration clause to arbitration." *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228, 231 (2d Cir. 1982).  And by submitting issues to arbitration, Defendants may not now object to arbitration after submitting but losing a key ruling.  *See, e.g.*, *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004))); *Wellman v. Writers Guild of Am., West, Inc.*, 146 F.3d 666, 673 (9th Cir. 1998) ("'[I]t is well settled that a party may not sit idle through an arbitration proceeding and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse.'"  (quoting *Marino v. Writers Guild of Am., East, Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993))); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) ("In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently

maintained that other provisions of the same contract should be enforced to benefit him.").[6]

The same equitable principles apply in the analogous context of determining whether a defendant has waived an objection to personal jurisdiction. *See, e.g.*, *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y. Produccion*, 832 F.3d 92, 101 (2d Cir. 2016) ("Because [Defendant] affirmatively and successfully sought relief from this Court remanding for a new merits determination in the Southern District, it forfeited its argument that personal jurisdiction is lacking.  [Defendant] cannot now re-contest personal jurisdiction merely because it is dissatisfied with its tactical choice."); *Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1296-97 (7th Cir.1993) (affirming district court's finding that defendants' participation during litigation constituted waiver of

_____

[6] To the extent state law principles apply to the waiver/estoppel question, Hawaii law follows the same principles.  *See, e.g.*, *Siopes v. Kaiser Found. Health Plan, Inc.*, 130 Haw. 437, 453-54, 312 P.3d 869, 885-86 (2013) ("[C]ourts have recognized that well-established common law principles dictate that in an appropriate case a *nonsignatory* can enforce, or be bound by, an arbitration provision within a contract executed by other parties [including] incorporation by reference, assumption, agency, veil-piercing/alter ego, estoppel, and third-party beneficiary theories."  (internal quotation marks omitted)); *Sher v. Cella*, 114 Haw. 263, 267, 160 P.3d 1250, 1254 (Haw. Ct. App. 2007) (discussing theories, including estoppel, for imposing arbitration provisions against a non-signatory); *Young v. Cnty. of Hawaii*, 2012 WL 2366016, at *6 (D. Haw. June 19, 2012) ("Hawaii appellate courts have recognized that a signatory may bind a nonsignatory to an arbitrate agreement pursuant to the following theories: '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'"  (quoting *In re United Public Workers, AFSCME, Local 646, AFL–CIO*, 124 Haw. 372, 379, 244 P.3d 609, 616 (Haw. Ct. App. 2010))); *Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 109, 705 P.2d 28, 36 (1985) ("We would not hesitate to declare a waiver or default if the defendant's conduct can be deemed inconsistent with a reliance on the contract.").

personal jurisdiction); *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999) ("[T]he actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not. . . .  In particular, where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter."  (internal quotation marks and citations omitted)).

Here, the record is clear that Defendants participated in arbitration proceedings with DPR for several weeks (more than two months), from at least November 2020 until late January 2021.  They only clearly refused to arbitrate on February 2, 2021, after receiving an unfavorable ruling on January 15, 2021, when the arbitrator ordered Defendants to produce documents requested by Plaintiff on November 21, 2020, *see* ECF No. 13-20 at PageID # 151.  The arbitrator specifically found that Defendants "shall produce the documents . . . by January 20, 2021." *Id.*  On January 21, 2021—after Heller had sought to settle the underlying dispute, *see* ECF No. 13-24—Smith claimed to the arbitrator that Defendants did not yet have the documents, but stated that Defendants "agree to produce the records upon receipt."  ECF No. 13-21 at PageID # 154.  Rather than produce the documents as agreed, Defendants formally objected to the arbitrator's jurisdiction on February 2, 2021 based on the inability of Plaintiff to produce a

signed copy of the 2009 engagement agreement. *See* ECF Nos. 13-25, 13-26. The arbitrator then suspended the arbitration (after specifically finding that both parties had agreed to schedule the arbitration hearing for February 11 and 12, 2021, ECF No. 13-27), pending litigation to compel arbitration. *Id.* at PageID # 169. Defendants' objection to arbitration was too late.

Defendants argue that they had objected to arbitrability earlier (claiming they "continuously" and "repeatedly" objected, ECF No. 15 at PageID ## 204-05) as indicated in a November 3, 2020 email stating that "we are not in agreement that we have consented to the jurisdiction of the ADR," ECF No. 13-13 at PageID # 131. They contend that by so objecting, they preserved their challenge to the arbitrator's jurisdiction. But the November 3, 2020 email *also* states "[h]owever, we are leaning in that direction [i.e., towards arbitration] after speaking with counsel," *id.* The objection was equivocal at best.

Defendants also claim they objected to arbitration by refusing to pay their share of the arbitrator's fees, after reminders from DPR for a signed DPR arbitration agreement and for payment of arbitration fees from both parties. ECF No. 15-1 at PageID # 210 (referencing ECF No. 15-8 at PageID # 238). But they only refused payment after submitting—and losing—the discovery issue. A party cannot raise an equivocal objection to arbitration, and then keep that objection in

its back pocket like a wild card to play if the arbitrator rules against that party.  *Cf.,*

*e.g.*, *Broadcast Music, Inc. v. M.T.S. Enters.*, 811 F.2d 278, 281 (5th Cir. 1987)

("The Federal Rules do not in any way suggest that a defendant may halfway

appear in a case, giving plaintiff and the court the impression that he has been

served, and, at the appropriate time, pull failure of service out of the hat like a

rabbit in order to escape default judgment."); *Cabinetree of Wisc., Inc. v.*

*Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) (disapproving of

parties who "play heads I win, tails you lose" by waiting to "see how the case was

going in federal district court before deciding whether it would be better off there

or in arbitration").

Finally, Defendants argued at the September 19, 2021 hearing that the

*purpose* of the arbitration was to identify if there was any enforceable arbitration

agreement, and that thus discovery was directed towards whether a signed copy of

the 2009 engagement agreement existed.  But the record contradicts Defendants'

position.  The purpose of the arbitration was to resolve Plaintiff's claim that

Defendants were in breach of contract.  Although Defendants had indeed requested

from Plaintiff "all signed agreements or contracts to provide legal services to

[Defendants]," ECF No. 15-11 at PageID # 247, the relevant discovery dispute

covered by Yim's January 15, 2021 order was different.  Yim's order involved

discovery regarding the merits of the dispute—Plaintiff's request for (1) all emails "which refer, relate, or concern Wilson and/or payments to Wilson," (2) "[e]mails and/or other written communications between Smith and his brother . . . which refer, relate, or concern a loan for purposes of paying Wilson," (3) "[a]ll correspondence with third parties which refer, relate, or concern Wilson and/or payments to Wilson," and (4) "[a]ll cancelled checks and/or wires memorializing any payments made to Wilson from 2011 to present."  ECF No. 13-15 at PageID ## 135-36.[7]

At best for Defendants, the existence of a signed copy of the 2009 engagement agreement was *relevant* towards whether fees were owed, but it was not the subject of the arbitration.  That is, the arbitrator was not tasked with deciding whether the dispute *itself* was subject to arbitration, an issue normally

---

[7] This case is unlike *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (en banc), in which the Ninth Circuit rejected arguments that a party had waived a right to challenge arbitrability by participating in arbitration proceedings.  *See id.* at 1277-80.  *Nagrampa* found no waiver, despite some participation, where the party "forcefully objected to arbitrability at the outset of the dispute, never withdrew that objection, and did not proceed to arbitration on the merits . . . ."  *Id.* at 1280.  In *Nagrampa*, the challenger's "first act was to object to proceeding with arbitration," *id.* at 1277, with "minimal" participation thereafter, "limited to procedural issues and undertaking certain actions to preserve her rights," *id.* at 1278.  The challenger "never participated in any proceedings which even touched the merits of the contractual claims that were to be the subject of arbitration."  *Id.*

Here, unlike in *Nagrampa*, Defendants did not "forcefully" object to arbitration, they agreed to an arbitration schedule, they actively participated in pre-arbitration discovery regarding documents related to the merits of the contract dispute, and they submitted (along with Plaintiff) a discovery dispute to the arbitrator for decision.  Only after being compelled to produce relevant documents did Defendants clearly raise their objection to arbitration.

reserved for a court. *See Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]hether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." (internal quotation and editorial marks omitted)). Further, there is no evidence suggesting that the parties agreed for the arbitrator to decide the arbitrability question. *Cf. Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 788 (9th Cir. 2001) ("Textile only participated in the arbitration to contest the arbitration itself. In so doing, Textile did not waive its objection to the arbitration.").

In short, applying well-established equitable principles, Defendants waived any right they had to object to arbitrability by participating in the arbitration with DPR to the point where the arbitrator ruled against them. Stated alternatively, they are estopped from challenging arbitrability now. *See, e.g.*, *Daniel*, 724 F.2d at 1357; *Ficek*, 338 F.2d at 657.

///

///

///

///

///

///

25

## IV.  **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Compel Arbitration, ECF No. 13, is GRANTED.  Defendants are compelled to arbitrate the underlying dispute regarding alleged nonpayment of fees and loan amounts.  The parties are to return to the prior (stayed) arbitration proceeding.  The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 15, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Wilson v. Smith, et al.*, Civ. No. 21-00184 JMS-KJM, Order Granting Plaintiff's Motion to Compel Arbitration, ECF No. 13